**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| NEOLAYER LLC, | § § § | |
| *Plaintiff,* | § § | Case No. 2:26-cv-00459 |
| v. | § § | |
| BOE TECHNOLOGY GROUP CO., LTD., | § § | Jury Trial Demanded |
| *Defendant.* | § § § § § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

Plaintiff NeoLayer LLC ("NeoLayer") files this Original Complaint against Defendant BOE Technology Group Co., Ltd. ("BOE") for patent infringement under 35 U.S.C. § 271. Plaintiff alleges, based on its own personal knowledge with respect to its own actions and based on information and belief with respect to all others' actions, as follows:

## I.　THE PARTIES

1. Plaintiff NeoLayer LLC ("NeoLayer") is a Texas limited liability company that holds all rights, title, and interests in United States Patent Nos. 8,093,592 (the "'592 Patent"), 8,698,712 (the "'712 Patent"), 8,330,358 (the "'358 Patent"), 8,674,365 (the "'365 Patent"), 11,088,129 (the "'129 Patent"), 7,663,145 (the "'145 Patent"), 8,168,976 (the "'976 Patent"), 7,541,737 (the "'737 Patent"), 8,018,013 (the "'013 Patent"), and 8,420,413 (the "'413 Patent") (collectively, the "Asserted Patents"). NeoLayer has a mailing address and a registered office address at 6275 W. Plano Pkwy Ste. #5132, Plano, TX 75093.

2.      Defendant BOE Technology Group Co., Ltd. ("BOE") is a corporation organized and existing under the laws of China with a registered address at 10 Jiuxianqiao Road, Chaoyang District, Beijing, 100015, P.R. China, and a principal place of business at No. 12 Xihuanzhong, RD, BDA, Beijing, 100176, P.R. China.

## II.      JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action brought by NeoLayer against BOE arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

4.      This Court may exercise general and specific personal jurisdiction over BOE consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. BOE has intentionally manufactured and/or distributed OLED and LCD display products that infringe the Asserted Patents, and/or caused its subsidiaries, affiliates, or intermediaries to manufacture and/or distribute infringing OLED and LCD display products, through established distribution channels, intending that those products be sold in the United States, the State of Texas, and this District. BOE holds itself and its subsidiaries out as a single global entity serving the United States. For example, according to BOE, "one out of every four display products in the world come[s] from BOE" and its display products are intended to be sold and used "abroad."[1] BOE has also touted itself as a "global leader in the . . . manufacture of semiconductor displays and a technological pioneer in the field of organic light emitting diode (OLED) displays."[2]

---

[1] *About Us*, BOE, https://www.boe.com/en/about/index (last visited Feb. 11, 2026).
[2] Dkt. No. 1, at ¶ 1, *BOE Technology Group Co., Ltd., et al. v. Samsung Display Co., Ltd.*, No. 2:25-cv-00587 (E.D. Tex.) (May 27, 2025).

5. Furthermore, BOE has (itself and/or through subsidiaries, affiliates, or intermediaries) committed acts of patent infringement in the United States, the State of Texas, and this District, including by making, using, offering to sell, and/or selling infringing OLED and LCD display products in the United States, the State of Texas, and this District and/or inducing others to commit acts of patent infringement and/or contributing to the direct infringement of others in the United States, the State of Texas, and this District.

6. BOE knows or should reasonably expect that the Accused Products, including the OLED and LCD displays described *infra*, are incorporated in finished consumer products sold in the United States, including in Texas (the state with the second-highest population) and this District. BOE further knows or should reasonably expect that these finished consumer products, such as Apple smartphones and other end-user devices identified and described *infra*, are sold in numerous retail locations throughout the United States, including in Texas and in this District. BOE also knows or should reasonably expect that finished consumer products incorporating the Accused Products are sold through websites controlled by U.S. companies, such as Apple, and are available to U.S. consumers, including in Texas and this District.

7. BOE has also purposely availed itself of the laws and protections of the United States, the State of Texas, and this District by filing claims and counterclaims in this District. *See, e.g.*, Dkt. No. 1, *BOE Technology Grp. Co., Ltd., et al. v. Samsung Display Co., Ltd.*, No. 2:25-cv-00587 (E.D. Tex. May 27, 2025); Dkt. No. 58, *Longitude Licensing Ltd. v. BOE Technology Grp. Co., Ltd.*, Case No. 2:23-cv-00515 (E.D. Tex. Jun. 13, 2024).

8. Accordingly, BOE has established minimum contacts within the forum and purposefully availed itself of the benefits of Texas, such that the exercise of personal jurisdiction over BOE would not offend traditional notions of fair play and substantial justice. In addition, or

3

in the alternative, this Court has personal jurisdiction over BOE pursuant to Federal Rule of Civil Procedure 4(k)(2).

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because BOE is a foreign entity and may be sued in any judicial district in the United States.

10. BOE did not move to transfer prior cases filed in this District, including but not limited to *Element Capital Commercial Company Pte. Ltd v. BOE Technology Grp. Co., et al.*, Case No. 2:22-cv-00118-JRG (E.D. Tex.), and *Vista Peak Ventures, LLC v. BOE Technology Grp. Co., Ltd.*, Case No. 2:18-cv-00431-JRG (E.D. Tex.).

### III.   THE ASSERTED PATENTS

11. On January 10, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,093,592 (the "'592 Patent"), entitled "Thin Film Transistor Substrate, Electronic Apparatus, and Methods For Fabricating The Same." A copy of the '592 Patent is attached as Exhibit A. On July 1, 2025, AUO Corporation assigned all of its rights, titles, and interests in the '592 Patent to NeoLayer.

12. On April 15, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,698,712 (the "'712 Patent"), entitled "Pixel Structure of Active Matrix Organic Electroluminescent Display Panel and Method of Making the Same." A copy of the '712 Patent is attached as Exhibit B. On July 1, 2025, AUO Corporation assigned all of its rights, titles, and interests in the '712 Patent to NeoLayer.

13. On December 11, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,330,358 (the "'358 Patent"), entitled "OLED Illumination Device with Improved Aperture Ratio." A copy of the '358 Patent is attached as Exhibit C. On July 1, 2025, AUO Corporation assigned all of its rights, titles, and interests in the '358 Patent to NeoLayer.

4

14. On March 18, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,674,365 (the "'365 Patent"), entitled "Array Substrate and Manufacturing Method Thereof." A copy of the '365 Patent is attached as Exhibit D. On July 1, 2025, AUO Corporation assigned all of its rights, titles, and interests in the '365 Patent to NeoLayer.

15. On August 10, 2021, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,088,129 (the "'129 Patent"), entitled "Display Apparatus." A copy of the '129 Patent is attached as Exhibit E. On July 1, 2025, AUO Corporation assigned all of its rights, titles, and interests in the '129 Patent to NeoLayer.

16. On February 16, 2010, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,663,145 (the "'145 Patent"), entitled "Display panel and method for manufacturing the same." A copy of the '145 Patent is attached as Exhibit F. On July 1, 2025, AUO Corporation assigned all of its rights, titles, and interests in the '145 Patent to NeoLayer.

17. On May 1, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,168,976 (the "'976 Patent"), entitled "Display panel and method for manufacturing the same." A copy of the '976 Patent is attached as Exhibit G. On July 1, 2025, AUO Corporation assigned all of its rights, titles, and interests in the '976 Patent to NeoLayer.

18. On June 2, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,541,737 (the "'737 Patent"), entitled "Organic electroluminescent device and display incorporating the same." A copy of the '737 Patent is attached as Exhibit H. On July 1, 2025, AUO Corporation assigned all of its rights, titles, and interests in the '737 Patent to NeoLayer.

19. On September 13, 2011, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,018,013 (the "'013 Patent"), entitled "Pixel structure and method

for manufacturing thereof." A copy of the '013 Patent is attached as Exhibit I. On July 1, 2025, AUO Corporation assigned all of its rights, titles, and interests in the '013 Patent to NeoLayer.

20.     On April 16, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,420,413 (the "'413 Patent"), entitled "Method for manufacturing pixel structure." A copy of the '413 Patent is attached as Exhibit J. On July 1, 2025, AUO Corporation assigned all of its rights, titles, and interests in the '413 Patent to NeoLayer.

21.     The Asserted Patents are valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

22.     To the extent any marking or notice was required by 35 U.S.C. § 287, NeoLayer has complied with the applicable marking and/or notice requirements of 35 U.S.C. § 287.

### IV.     THE ACCUSED PRODUCTS

23.     The Accused Products are OLED and LCD displays used, made, sold, offered for sale, or imported, directly or indirectly, by BOE, including OLED and LCD displays incorporated by BOE's third-party customers into smartphones, tablet PCs, laptops, monitors, TVs, smartwatches, vehicles, and other end-user devices ("Accused Products").

24.     By way of example and not limitation, the Accused Products include BOE's OLED displays that are incorporated into various models, sizes, and variants of the following end-user devices: iPhone 13, iPhone 14, iPhone 15, iPhone 15 Plus, iPhone 16, iPhone 16 Plus, iPhone 16e, Google Pixel 9 Pro, Google Pixel 9 Pro Fold, OnePlus 12, OnePlus 13, Nubia Red Magic 9 Pro, and Nubia Red Magic 10 Pro.[3]

25.     By way of example and not limitation, the Accused Products include BOE's LCD displays that are incorporated into various models, sizes, and variants of the following end-user

---

[3] Discovery may reveal the existence of additional infringing products or end-user devices.

devices: Hisense U7 Series, Hisense U8 Series, Hisense U9 Series, Hisense UX Series, Hisense A4 Series, Hisense QD6 Series, Hisense QD7 Series, Skyworth A5F Pro, MacBook Air (13-inch), and MacBook Air (15-inch).[4]

26.     BOE imports, offers to sell, and sells Accused Products in the United States and provides Accused Products to third parties for sale in the United States as part of third-party devices, and BOE actively targets the U.S. market for sales of the Accused Products. For example, BOE sells Accused Products to customers for incorporation into electronic devices, and those sales occur in the United States. For example, BOE is identified on Apple's Supplier List,[5] industry market reports confirm that BOE supplies OLED displays for use in Apple iPhone models sold in the United States,[6] and BOE itself has publicly confirmed its role as an OLED supplier to Apple.[7] For another example, BOE is identified on Apple's Supplier List,[8] industry market reports confirm that BOE supplies LCD displays for use in at least Apple MacBook models sold in the United States,[9] and BOE's own U.S. subsidiary has publicly confirmed its role as an LCD supplier to Apple.[10]

---

[4] Discovery may reveal the existence of additional infringing products or end-user devices.

[5] Apple, Inc., Supplier List (2024), https://www.supplychainreports.apple/files/doc_downloads/2024/04/Apple-Supplier-List.pdf (last visited June 3, 2026).

[6] *See, e.g.*, *The iPhone OLED Supply Chain in 2022*, OMDIA (June 23, 2022), https://omdia.tech.informa.com/blogs/2022/jun/the-iphone-oled-supply-chain-in-2022 (last visited Feb. 11, 2026).

[7] *BOE Release New Q9 OLED Materials at Innovative Technology Conference*, BOE, https://boe-us.com/news/boe-innovative-technology-conference (last visited June 3, 2026).

[8] Apple, Inc., Supplier List (2024), https://www.supplychainreports.apple/files/doc_downloads/2024/04/Apple-Supplier-List.pdf (last visited June 3, 2026).

[9] *BOE poised to become Apple's top MacBook display panel supplier in 2025*, OMDIA, https://omdia.tech.informa.com/pr/2025/jul/boe-poised-to-become-apples-top-macbook-display-panel-supplier-in-2025-says-omdia (last visited June 3, 2026).

[10] *BOE Release New Q9 OLED Materials at Innovative Technology Conference*, BOE, https://boe-us.com/news/boe-innovative-technology-conference (last visited June 3, 2026).

## V.    FACTUAL BACKGROUND

### *OLED Technology*

27.    An organic light emitting diode ("OLED") includes several layers of organic and non-organic materials that are stacked together on a substrate. For example, and as shown below, an OLED may include a substrate, an anode, a hole injection layer, a hole transport layer, an emissive layer, a blocking layer, an electron transport layer, and a cathode.



28.    Applying a voltage across an OLED causes electrons to be injected from the cathode and holes to be injected from the anode. The electron-hole pairs formed in an emissive layer recombine to form a high-energy state called an exciton. When the exciton decays, photons (*i.e.*, light) are emitted either through an electroluminescent process or a phosphorescent process, depending on the materials in the emissive layer. The specific color of the light is determined by the chemical structure of the organic molecules in the emissive layer.

29.    OLED panels comprise millions of individual OLEDs, sometimes referred to as OLED pixels or pixel structures, arranged along rows and columns of a substrate (*e.g.*, a glass or

plastic substrate). These OLED panels are a core component of many types of electronic devices, such as smartphones, TVs, computer monitors, laptops, tablets, and smart watches. There is high consumer demand for OLED devices because of their superior display quality compared to other types of displays, such as liquid crystal displays ("LCDs").

30.    Most modern OLED devices include active-matrix OLED ("AMOLED") panels. AMOLED panels use a combination of thin-film transistors ("TFTs" or "TFT backplane") and capacitors to drive the OLEDs in these panels. AMOLED panels may use different types of TFTs, including low-temperature polycrystalline silicon TFTs ("LTPS TFTs"), a combination of low temperature polycrystalline silicon and oxide TFTs ("LTPO TFTs"), indium gallium zinc oxide TFTs ("IGZO TFTs"), and amorphous silicon TFTs ("a-SI TFTs").

### *LCD Technology*

31.    A liquid crystal display ("LCD") includes several layers of materials that are stacked together on a substrate. For example, and as shown below, an LCD may include a backlight unit, a back polarizer, a rear glass substrate, a thin-film transistor array, a liquid crystal layer, a color filter, a front glass substrate, and a top polarizer.



9

32.     Applying a voltage across an LCD pixel causes the liquid crystal molecules to reorient, controlling the amount of backlight that passes through the front polarizer. Color is produced by passing the transmitted light through red, green, and blue color filter elements, with the specific color of each pixel determined by the relative intensity of light through each sub-pixel.

33.     LCD panels comprise millions of individual liquid crystal pixels arranged along rows and columns of a substrate (e.g., a glass substrate). These LCD panels are a core component of many types of electronic devices, such as smartphones, TVs, computer monitors, laptops, tablets, and smart watches.

34.     Most modern LCD devices include active-matrix LCD ("AMLCD") panels. AMLCD panels use a combination of thin-film transistors and storage capacitors to independently address each pixel. AMLCD panels may use different types of TFTs, including LTPS TFTs, IGZO TFTs, and amorphous silicon TFTs.

### BOE's Display Devices Business and Targeting of the U.S. Market

35.     BOE is a Chinese multinational corporation and one of the world's leading manufacturers of semiconductor display products. According to BOE's annual reports, its Display Devices business is the company's single largest revenue-generating segment, accounting for more than 83% of BOE's total operating revenue in both 2023 and 2024. BOE has repeatedly held itself out as a global leader in the semiconductor display industry. Its 2022 annual report stated that BOE's semiconductor display products ranked first worldwide in shipment volume.

36.     BOE's Display Devices business provides OLED and LCD displays, among other display products, to third parties that then incorporate BOE's products into finished devices for end users. BOE's 2022 annual report refers to these third parties as its "brand customers."

37.     BOE targets the United States market for its sales of display products. According to BOE's 2022 annual report, approximately 20% of its 2022 operating revenue came from its

10

"America" operating segment, which includes the United States. That same report also notes that BOE ranked eleventh worldwide among entities with the most U.S. patents granted, and that it was among the global top 20 U.S. patent grantees for five consecutive years. BOE has stated that it obtains U.S. patents to protect the U.S. market for its products. In January 2017, Li Xinguo, BOE's Vice President and Director of BOE's Intellectual Property and Technology Management Center, stated regarding BOE's inclusion among the top 50 entities receiving patent assignments from the USPTO: "In the past, BOE applied for patents mainly to protect our products. Now, we also seek to increase the market shares of our products." [11]

38.    BOE targets the U.S. market for its display products through subsidiaries under the common ownership of BOE, including its U.S.-based subsidiary, BOE Technology America, Inc. ("BOE America"). At BOE's direction and control, BOE America participates in and facilitates the supply of BOE's display products to the U.S. market. [12] These activities include strategic brand customer development, support services for BOE's existing U.S.-based customers, promoting and marketing BOE's display products, and participating at conferences and events on behalf of BOE. For example, BOE America's website boasts that BOE ranked second in the worldwide market for OLED manufacturing in 2022 and touts its role as Apple's OLED supplier. [13] BOE has also claimed that it ranked "first worldwide in terms of LCD panel shipments" in 2025. [14] BOE's global website states that BOE America currently has three offices in the United States.

---

[11] *BOE ranked 40th in the Top 50 USPTO Patent Assignees in 2016*, BOE, https://www.boe.com/en/company/dynamic-891ce385fc934f698f223a3072960c7e, (last visited Feb. 11, 2026).

[12] *See, e.g.*, *FAQ*, BOE, https://boe-us.com/faq (last visited Feb. 11, 2026) ("BOE America serves as a liaison between customers in the US and BOE's R&D, production, commercial teams in Asia.").

[13] *BOE Release New Q9 OLED Materials at Innovative Technology Conference*, BOE, https://boe-us.com/news/boe-innovative-technology-conference (last visited Feb. 11, 2026).

[14] *See, e.g.*, *About Us*, BOE, https://www.boe.com/en/about/index (last visited June 3, 2026).

39.     BOE America is an extension of BOE, controlled by BOE, and under common ownership with BOE. According to BOE America's corporate filings, its officers and directors are also high-level BOE employees, indicating that BOE America exists for the purpose of serving BOE's market in the United States.

40.     BOE has also imported Accused Products into the United States, and used them in the United States, to promote them at industry and trade shows. For example, BOE imported OLED and LCD devices into the United States for exhibition at trade shows, such as the Consumer Electronics Show (CES) and the Society for Information Display's (SID) DisplayWeek events, including as recently as 2026. [15]

41.     Accordingly, BOE (directly and/or through subsidiaries, affiliates, or intermediaries) has imported, offered to sell, and sold, infringing OLED and LCD displays in the United States through established distribution channels, and continues to engage in these acts. BOE purposefully places its infringing products into the stream of commerce through established distribution channels with the expectation or knowledge that they will be purchased by consumers in the United States, the State of Texas, and this District. [16]

---

[15] *See, e.g.*, *BOE at CES 2026: Where Displays Meet the Future*, BOE, https://boe-us.com/news/boe-ces-2026 (last visited Feb. 11, 2026); *The Future of OLED at Display Week 2025*, OLED-INFO, https://www.oled-info.com/future-oled-display-week-2025 (last visited Feb. 11, 2026) ("All the major display providers will be there, including AUO, BOE . . . ."); *BOE unveils HERO 2.0 Smart Cockpit at CES 2026, setting the pace for smart and green display*, PR Newswire, https://www.prnewswire.com/news-releases/boe-unveils-hero-2-0-smart-cockpit-at-ces-2026--setting-the-pace-for-smart-and-green-display-302656135.html.

[16] *See, e.g.*, in its February 28, 2023 motion to intervene as a respondent in the -1351 ITC Investigation, a BOE subsidiary admitted that it "manufactures and sells AMOLED screens to" other entities, and that "some of those screens are thereafter imported into the United States." Ex. K at 6. Thus, BOE was by its own admission aware that its infringing OLED displays would be imported by its customers into the U.S. (and that its customers' downstream products would infringe via their use of the infringing OLED displays), yet it has sold those displays to those customers anyway.

42.     BOE does not have any ownership rights in the Asserted Patents. Additionally, BOE does not have a license to make, use, sell, or offer for sale, or import into the United States the technology covered by the Asserted Patents.

43.     The Asserted Patents provide many improvements to OLED and LCD displays, all of which are realized in Accused Products. The technology covered by the Asserted Patents has helped BOE increase its sales revenue, its global share of the market for OLED and LCD products, and its competitive advantage over its competitors.

44.     In the interest of providing detailed averments of infringement, NeoLayer has identified below at least one claim in each of the Asserted Patents to demonstrate infringement. However, the selection of claims should not be considered limiting, and additional claims of the Asserted Patents that are infringed by BOE will be disclosed in compliance with the Court's schedule.

## VI.     COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,093,592 ("'592 PATENT")

45.     NeoLayer re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

46.     NeoLayer is informed and believes, and on this basis alleges, that BOE, agents of BOE, and/or third parties acting under BOE's direction and control, have committed acts of direct infringement under 35 U.S.C. §§ 271(a) and/or 271(g) of the '592 Patent literally and/or under the doctrine of equivalents by making, using, selling, offering to sell, and/or importing within this district and elsewhere in the United States, without authority, products that infringe the '592 Patent, and, those products are not materially changed by subsequent process and have not become trivial and nonessential components of another product.

47.     The Accused Products infringe at least one claim of the '592 Patent. By way of example, the Apple iPhone 16e (the "Accused Phone") infringes claim 8 of the '592 Patent. Claim 8 of the '592 Patent recites:

> **8.** A method for fabricating a thin film transistor substrate, the method comprising:
>
> providing a substrate;
>
> forming at least a semiconductor island on the substrate, the semiconductor island comprising a plurality of sub-grain boundaries;
>
> respectively defining a source region, a drain region, and a channel region located between the source region and the drain region in the semiconductor island, wherein the length of the channel region is extended along a curve, and the width of the channel region remains substantially the same in an extending direction of the curve; and
>
> forming at least a gate corresponding to the channel region.

48.     BOE's method for fabricating the "thin film transistor substrate" of the Accused Phone comprises "providing a substrate," as illustrated below in the annotated image of a thin-film transistor cross section.



49.     BOE's method for fabricating the "thin film transistor substrate" of the Accused Phone comprises "forming at least a semiconductor island on the substrate, the semiconductor island comprising a plurality of sub-grain boundaries" as illustrated below in the annotated image of a thin-film transistor cross section.



50.     BOE's method for fabricating the "thin film transistor substrate" of the Accused Phone comprises "respectively defining a source region, a drain region, and a channel region located between the source region and the drain region in the semiconductor island," as illustrated below in the annotated image of the display panel.



51.     BOE's method for fabricating the "thin film transistor substrate" of the Accused Phone comprises "respectively defining … a channel region … wherein the length of the channel region is extended along a curve, and the width of the channel region remains substantially the

same in an extending direction of the curve," as illustrated below in the annotated image of the display panel.



52.    BOE's method for fabricating the "thin film transistor substrate" of the Accused Phone comprises "forming at least a gate corresponding to the channel region," as illustrated below in the annotated images of the display panel and a thin-film transistor cross section.





53.     BOE therefore has directly infringed the '592 Patent under 35 U.S.C. §§ 271(a) and/or 271(g) by making, using, selling, offering to sell, and/or importing into the United States the Accused Products, their components and processes, and/or products that incorporate the fundamental technologies and claims of the '592 Patent. For example, BOE directly infringed the '592 Patent under 35 U.S.C. § 271(g) by offering to sell, selling, importing, and/or using infringing products, their components, and/or products containing same, that were manufactured by a process covered by the '592 Patent. These infringing products, their components, and/or products containing same have not been materially changed by subsequent processes, nor have they become a trivial or nonessential component of another product.

54.     NeoLayer is also informed and believes, and on this basis alleges, that BOE has induced infringement of the '592 Patent, in violation of 35 U.S.C. § 271(b), by intentionally aiding and encouraging third parties (including BOE's vendors, customers, and partners) to use, sell, or offer for sale in the United States and/or import into the United States the Accused Products, having known that the acts it was causing would infringe or have a high probability of infringing the '592 Patent under 35 U.S.C. §§ 271(a) and/or 271(g) and with a specific intent that those performing the acts infringe the '592 Patent.

55.     NeoLayer is also informed and believes, and on this basis alleges, that BOE contributorily infringed the '592 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate them into other products, including the iPhone 16e and other end-user devices. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the '592 Patent. The OLED displays that BOE has sold and/or provided to customers embody a material part of the claimed invention of at least one claim of the '592 Patent.

56.     BOE has been on notice of the '592 Patent, at least as early as the filing and service of this Complaint.

57.     BOE's direct and indirect infringement of the '592 Patent is ongoing.

58.     As a result of BOE's infringement of the '592 Patent, NeoLayer has been damaged. NeoLayer is entitled to recover for damages sustained as a result of BOE's wrongful acts in an amount yet to be determined.

59.     BOE's infringing acts and practices have caused and are causing immediate and irreparable harm to NeoLayer.

## VII.   COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,698,712 ("'712 PATENT")

60.     NeoLayer re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

61.     NeoLayer is informed and believes, and on this basis alleges, that BOE, agents of BOE, and/or third parties acting under BOE's direction and control, have committed acts of direct infringement under 35 U.S.C. § 271(a) of the '712 Patent literally and/or under the doctrine of equivalents by making, using, selling, offering to sell, and/or importing within this district and elsewhere in the United States, without authority, products that infringe the '712 Patent.

62.     The Accused Products infringe at least one claim of the '712 Patent. By way of example, the Apple iPhone 16e (the "Accused Phone") infringes claim 10 of the '712 Patent. Claim 10 of the '712 Patent recites:

> **10.** A pixel structure of active matrix organic electroluminescent display panel, comprising:
>
> a first light emitting device;
>
> a first driving switching device electrically connected to the first light emitting device for driving the first light emitting device;
>
> a second light emitting device;
>
> a second driving switching device electrically connected to the second light emitting device for driving the second light emitting device; and
>
> at least one addressing switching device electrically connected to at least one of the first driving switching device and the second driving switching device.

63.     The Accused Phone includes "[a] pixel structure of active matrix organic electroluminescent display panel," as illustrated in the images shown below.

| Display | Super Retina XDR display |
| --- | --- |
| | 6.1-inch (diagonal) all-screen OLED display |
| | 2532-by-1170-pixel resolution at 460 ppi |
| | HDR display |

19



64.    The "pixel structure of active matrix organic electroluminescent display panel" comprises "a first light emitting device," as illustrated below in the annotated image of the display panel shown.



65.     The "pixel structure of active matrix organic electroluminescent display panel" comprises "a first driving switching device electrically connected to the first light emitting device for driving the first light emitting device," as illustrated below in the annotated images of the display panel.





66.    The "pixel structure of active matrix organic electroluminescent display panel" comprises "a second light emitting device," as illustrated below in the annotated image of the display panel.



67.    The "pixel structure of active matrix organic electroluminescent display panel" comprises "a second driving switching device electrically connected to the second light emitting device for driving the second light emitting device," as illustrated below in the annotated image of the display panel.



68.     The "pixel structure of active matrix organic electroluminescent display panel" comprises "at least one addressing switching device electrically connected to at least one of the first driving switching device and the second driving switching device," as illustrated below in the annotated images of the display panel.





69. BOE therefore has directly infringed the '712 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing into the United States the Accused Products, their components and processes, and/or products that incorporate the fundamental technologies and claims of the '712 Patent. As one example of infringement under 35 U.S.C. § 271(a), BOE sold and made Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or delivered the Accused Products outside of the United States intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States.

70. NeoLayer is also informed and believes, and on this basis alleges, that BOE has induced infringement of the '712 Patent, in violation of 35 U.S.C. § 271(b), by intentionally aiding and encouraging third parties (including BOE's vendors, customers, and partners) to use, sell, or offer for sale in the United States and/or import into the United States the Accused Products, having known that the acts it was causing would infringe or have a high probability of infringing the '712 Patent under 35 U.S.C. § 271(a) and with a specific intent that those performing the acts infringe the '712 Patent.

71. NeoLayer is also informed and believes, and on this basis alleges, that BOE contributorily infringed the '712 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate them into other products, including the iPhone 16e and other end-user devices. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the '712 Patent. BOE engaged in these activities despite having notice of the '712 Patent, and the OLED displays that BOE has sold and/or provided to customers embody a material part of the claimed invention of at least one claim of the '712 Patent.

72.     BOE knew of its infringement of the '712 Patent based on the prosecution history of its own patent portfolio. For example, BOE is the owner of U.S. Patent No. 10,916,186 (the "'186 Patent"), titled "Display apparatus, electroluminescent display panel and method of acquiring and displaying image by display apparatus."  During prosecution of the '186 Patent, the examiner cited U.S. Patent Publication No. 2012/0162271, which ultimately issued as the '712 Patent. Therefore, BOE knew of the '712 Patent and knew that the Accused Products infringed the '712 Patent or, alternatively, believed there was a high probability the Accused Products infringed the '712 Patent, but took deliberate action to avoid learning that fact. On this basis, NeoLayer alleges that BOE's infringement of the '712 Patent was deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to NeoLayer pursuant to 35 U.S.C. §§ 284–285.

73.     BOE's direct and indirect infringement of the '712 Patent is ongoing.

74.     As a result of BOE's infringement of the '712 Patent, NeoLayer has been damaged. NeoLayer is entitled to recover for damages sustained as a result of BOE's wrongful acts in an amount yet to be determined.

75.     BOE's infringing acts and practices have caused and are causing immediate and irreparable harm to NeoLayer.

### VIII.   COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,330,358 ("'358 PATENT")

76.     NeoLayer re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

77.     NeoLayer is informed and believes, and on this basis alleges, that BOE, agents of BOE, and/or third parties acting under BOE's direction and control, have committed acts of direct infringement under 35 U.S.C. § 271(a) of the '358 Patent literally and/or under the doctrine of

26

equivalents by making, using, selling, offering to sell, and/or importing within this district and elsewhere in the United States, without authority, products that infringe the '358 Patent.

78. The Accused Products infringe at least one claim of the '358 Patent. By way of example, the Apple iPhone 16e (the "Accused Phone") infringes claim 1 of the '358 Patent. Claim 1 of the '358 Patent recites:

**1.** An illumination device comprising:

a transparent substrate comprising an emitting area and a peripheral area, wherein the peripheral area is disposed at an edge of the transparent substrate, and the emitting area comprising a plurality of sub-emitting areas; and

a plurality of first metal lines disposed on the transparent substrate, each first metal line has an end connected to a corresponding one of the sub-emitting areas and an opposite end connected to the peripheral area,

wherein each sub-emitting area comprises an insulating layer, a second metal line and an OLED layer, and the second metal line is disposed between the transparent substrate and the OLED layer, the insulating layer is between the first metal lines and the second metal line, each first metal line is overlapped with the second metal line in vertical projection, and one of the first metal lines, which is connected to a first one of the sub-emitting areas, passes through a second one of the sub-emitting areas.

79. The Accused Phone includes "an illumination device," as illustrated in the images shown below.

| Display | Super Retina XDR display |
| --- | --- |
| | 6.1-inch (diagonal) all-screen OLED display |
| | 2532-by-1170-pixel resolution at 460 ppi |
| | HDR display |



80.     The "illumination device" of the Accused Phone comprises "a transparent substrate comprising an emitting area and a peripheral area, wherein the peripheral area is disposed at an edge of the transparent substrate," as illustrated below in the annotated image of a bottom portion of the display panel.



81.    For the "illumination device" of the Accused Phone, "the emitting area compris[es] a plurality of sub-emitting areas," as illustrated below in the annotated image of the display panel filter.



82.    The "illumination device" of the Accused Phone comprises "a plurality of first metal lines disposed on the transparent substrate," as illustrated below in the annotated image of the display panel.



29

83.    For the "illumination device" of the Accused Phone, "each first metal line has an end connected to a corresponding one of the sub-emitting areas," as illustrated below in the annotated image of the display panel.



84.    For the "illumination device" of the Accused Phone, "each first metal line has . . . an opposite end connected to the peripheral area," as illustrated below in the annotated image of a bottom portion of the display panel.



85.    For the "illumination device" of the Accused Phone, "each sub-emitting area comprises an insulating layer, a second metal line and an OLED layer, and the second metal line

is disposed between the transparent substrate and the OLED layer, the insulating layer is between the first metal lines and the second metal line," as illustrated below in the annotated image of a display panel cross section.



86. For the "illumination device" of the Accused Phone, "each first metal line is overlapped with the second metal line in vertical projection," as illustrated below in the annotated image of the display panel.



87. For the "illumination device" of the Accused Phone, "one of the first metal lines, which is connected to a first one of the sub-emitting areas, passes through a second one of the sub-emitting areas," as illustrated below in the annotated image of the display panel.



88.	BOE therefore has directly infringed the '358 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing into the United States the Accused Products, their components and processes, and/or products that incorporate the fundamental technologies and claims of the '358 Patent. As one example of infringement under 35 U.S.C. § 271(a), BOE sold and made Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or delivered the Accused Products outside of the United States intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States.

89.	NeoLayer is also informed and believes, and on this basis alleges, that BOE has induced infringement of the '358 Patent, in violation of 35 U.S.C. § 271(b), by intentionally aiding and encouraging third parties (including BOE's vendors, customers, and partners) to use, sell, or offer for sale in the United States and/or import into the United States the Accused Products, having known that the acts it was causing would infringe or have a high probability of infringing the '358

32

Patent under 35 U.S.C. § 271(a) and with a specific intent that those performing the acts infringe the '358 Patent.

90.    NeoLayer is also informed and believes, and on this basis alleges, that BOE contributorily infringed the '358 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate them into other products, including the iPhone 16e and other end-user devices. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the '358 Patent. The OLED displays that BOE has sold and/or provided to customers embody a material part of the claimed invention of at least one claim of the '358 Patent.

91.    BOE has been on notice of the '358 Patent, at least as early as the filing and service of this Complaint.

92.    BOE's direct and indirect infringement of the '358 Patent is ongoing.

93.    As a result of BOE's infringement of the '358 Patent, NeoLayer has been damaged. NeoLayer is entitled to recover for damages sustained as a result of BOE's wrongful acts in an amount yet to be determined.

94.    BOE's infringing acts and practices have caused and are causing immediate and irreparable harm to NeoLayer.

## IX.    COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,674,365 ("'365 PATENT")

95.    NeoLayer re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

96.    NeoLayer is informed and believes, and on this basis alleges, that BOE, agents of BOE, and/or third parties acting under BOE's direction and control, have committed acts of direct infringement under 35 U.S.C. § 271(a) of the '365 Patent literally and/or under the doctrine of

33

equivalents by making, using, selling, offering to sell, and/or importing within this district and elsewhere in the United States, without authority, products that infringe the '365 Patent.

97.    The Accused Products infringe at least one claim of the '365 Patent. By way of example, the Google Pixel 9 Pro (the "Accused Phone") infringes claim 1 of the '365 Patent. Claim 1 of the '365 Patent recites:

> **1.** An array substrate, comprising:
>
> a substrate; and
>
> a thin film transistor, disposed on the substrate, wherein the thin film transistor comprises:
>
> a gate electrode, disposed on the substrate;
>
> a patterned gate insulating layer, disposed on the gate electrode;
>
> a patterned semiconductor layer, disposed on the patterned gate insulating layer;
>
> a patterned etching stop layer, disposed on the patterned semiconductor layer;
>
> a protective layer, disposed on the patterned etching stop layer, wherein the protective layer and the patterned etching stop layer have a plurality of contact openings that partially expose the patterned semiconductor layer; and
>
> a source electrode and a drain electrode, disposed on the protective layer and the patterned semiconductor layer, and the source electrode and the drain electrode are electrically connected to the patterned semiconductor layer via the contact openings.

98.    The Accused Phone includes "an array substrate," as illustrated in the images shown below.





99.    The "array substrate" of the Accused Phone comprises "a substrate," as illustrated below in the annotated image of a display panel cross section.



100.    The "array substrate" of the Accused Phone comprises "a thin film transistor, disposed on the substrate," as illustrated below in the annotated image of a display panel cross section.



101.    The "thin film transistor" of the Accused Phone comprises "a gate electrode, disposed on the substrate," as illustrated below in the annotated image of a display panel cross section.



102.    The "thin film transistor" of the Accused Phone comprises "a patterned gate insulating layer, disposed on the gate electrode," as illustrated below in the annotated image of a display panel cross section.



103.    The "thin film transistor" of the Accused Phone comprises "a patterned semiconductor layer, disposed on the patterned gate insulating layer," as illustrated below in the annotated image of a display panel cross section.



104.    The "thin film transistor" of the Accused Phone comprises "a patterned etching stop layer, disposed on the patterned semiconductor layer," as illustrated below in the annotated image of a display panel cross section.



105.    The "thin film transistor" of the Accused Phone comprises "a protective layer, disposed on the patterned etching stop layer, wherein the protective layer and the patterned etching stop layer have a plurality of contact openings that partially expose the patterned semiconductor layer," as illustrated below in the annotated image of a display panel cross section.



106.    The "thin film transistor" of the Accused Phone comprises "a source electrode and a drain electrode, disposed on the protective layer and the patterned semiconductor layer, and the

source electrode and the drain electrode are electrically connected to the patterned semiconductor layer via the contact openings," as illustrated below in the annotated image of a display panel cross section.



107.    BOE therefore has directly infringed the '365 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing into the United States the Accused Products, their components and processes, and/or products that incorporate the fundamental technologies and claims of the '365 Patent. As one example of infringement under 35 U.S.C. § 271(a), BOE sold and made Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or delivered the Accused Products outside of the United States intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States.

108.    NeoLayer is also informed and believes, and on this basis alleges, that BOE has induced infringement of the '365 Patent, in violation of 35 U.S.C. § 271(b), by intentionally aiding and encouraging third parties (including BOE's vendors, customers, and partners) to use, sell, or offer for sale in the United States and/or import into the United States the Accused Products, having known that the acts it was causing would infringe or have a high probability of infringing the '365 Patent under 35 U.S.C. § 271(a) and with a specific intent that those performing the acts infringe the '365 Patent.

109. NeoLayer is also informed and believes, and on this basis alleges, that BOE contributorily infringed the '365 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate them into other products, including the Google Pixel 9 Pro and other end-user devices. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the '365 Patent. The OLED displays that BOE has sold and/or provided to customers embody a material part of the claimed invention of at least one claim of the '365 Patent.

110. BOE has been on notice of the '365 Patent, at least as early as the filing and service of this Complaint.

111. BOE's direct and indirect infringement of the '365 Patent is ongoing.

112. As a result of BOE's infringement of the '365 Patent, NeoLayer has been damaged. NeoLayer is entitled to recover for damages sustained as a result of BOE's wrongful acts in an amount yet to be determined.

113. BOE's infringing acts and practices have caused and are causing immediate and irreparable harm to NeoLayer.

## X.   COUNT V: INFRINGEMENT OF U.S. PATENT NO. 11,088,129 ("'129 PATENT")

114. NeoLayer re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

115. NeoLayer is informed and believes, and on this basis alleges, that BOE, agents of BOE, and/or third parties acting under BOE's direction and control, have committed acts of direct infringement under 35 U.S.C. § 271(a) of the '129 Patent literally and/or under the doctrine of equivalents by making, using, selling, offering to sell, and/or importing within this district and elsewhere in the United States, without authority, products that infringe the '129 Patent.

116.    The Accused Products infringe at least one claim of the '129 Patent. By way of example, the Google Pixel 9 Pro (the "Accused Phone") infringes claim 1 of the '129 Patent. Claim 1 of the '129 Patent recites:

**1.** A display apparatus comprising:

a substrate;

a first circuit layer disposed on the substrate;

a first adhesive layer disposed on the first circuit layer;

a second circuit layer disposed on the first adhesive layer;

a first conductive element disposed on the second circuit layer and electrically connected to the second circuit layer, wherein the first adhesive layer has a first via, and the first conductive element is electrically connected to the first circuit layer through the first via of the first adhesive layer; and

a display element layer disposed on the second circuit layer and electrically connected to the second circuit layer,

wherein the second circuit layer comprises a thin-film transistor having a gate, a semiconductor pattern and an insulating sublayer disposed between the gate and the semiconductor pattern; the insulating sublayer has a first via disposed outside of the semiconductor pattern; the first conductive element is electrically connected to the first circuit layer through the first via of the insulating sublayer of the thin-film transistor of the second circuit layer and the first via of the first adhesive layer.

117.    The Accused Phone includes "a display apparatus," as illustrated in the images shown below.





118.    The "display apparatus" of the Accused Phone comprises "a substrate," as illustrated below in the annotated image of a display panel cross section.



119.    The "display apparatus" of the Accused Phone comprises "a first circuit layer disposed on the substrate," as illustrated below in the annotated image of a display panel cross section.



120.    The "display apparatus" of the Accused Phone comprises "a first adhesive layer disposed on the first circuit layer," as illustrated below in the annotated image of a display panel cross section.



121.    The "display apparatus" of the Accused Phone comprises "a second circuit layer disposed on the first adhesive layer," as illustrated below in the annotated image of a display panel cross section.



122.    The "display apparatus" of the Accused Phone comprises "a first conductive element disposed on the second circuit layer and electrically connected to the second circuit layer, wherein the first adhesive layer has a first via, and the first conductive element is electrically connected to the first circuit layer through the first via of the first adhesive layer," as illustrated below in the annotated image of a display panel cross section.



123.    The "display apparatus" of the Accused Phone comprises "a display element layer disposed on the second circuit layer and electrically connected to the second circuit layer," as illustrated below in the annotated image of the display panel.



124.    For the "display apparatus" of the Accused Phone, "the second circuit layer comprises a thin-film transistor having a gate, a semiconductor pattern and an insulating sublayer disposed between the gate and the semiconductor pattern," as illustrated below in the annotated image of a display panel cross section.



125.    For the "display apparatus" of the Accused Phone, "the insulating sublayer has a first via disposed outside of the semiconductor pattern; the first conductive element is electrically connected to the first circuit layer through the first via of the insulating sublayer of the thin-film

transistor of the second circuit layer and the first via of the first adhesive layer," as illustrated below in the annotated image of a display panel cross section.



126.    BOE therefore has directly infringed the '129 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing into the United States the Accused Products, their components and processes, and/or products that incorporate the fundamental technologies and claims of the '129 Patent. As one example of infringement under 35 U.S.C. § 271(a), BOE sold and made Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or delivered the Accused Products outside of the United States intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States.

127.    NeoLayer is also informed and believes, and on this basis alleges, that BOE has induced infringement of the '129 Patent, in violation of 35 U.S.C. § 271(b), by intentionally aiding and encouraging third parties (including BOE's vendors, customers, and partners) to use, sell, or offer for sale in the United States and/or import into the United States the Accused Products, having known that the acts it was causing would infringe or have a high probability of infringing the '129 Patent under 35 U.S.C. § 271(a) and with a specific intent that those performing the acts infringe the '129 Patent.

128.   NeoLayer is also informed and believes, and on this basis alleges, that BOE contributorily infringed the '129 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate them into other products, including the Google Pixel 9 Pro and other end-user devices. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the '129 Patent. The OLED displays that BOE has sold and/or provided to customers embody a material part of the claimed invention of at least one claim of the '129 Patent.

129.   BOE has been on notice of the '129 Patent, at least as early as the filing and service of this Complaint.

130.   BOE's direct and indirect infringement of the '129 Patent is ongoing.

131.   As a result of BOE's infringement of the '129 Patent, NeoLayer has been damaged. NeoLayer is entitled to recover for damages sustained as a result of BOE's wrongful acts in an amount yet to be determined.

132.   BOE's infringing acts and practices have caused and are causing immediate and irreparable harm to NeoLayer.

## XI.   COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,663,145 ("'145 PATENT")

133.   NeoLayer re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

134.   NeoLayer is informed and believes, and on this basis alleges, that BOE, agents of BOE, and/or third parties acting under BOE's direction and control, have committed acts of direct infringement under 35 U.S.C. § 271(a) of the '145 Patent literally and/or under the doctrine of equivalents by making, using, selling, offering to sell, and/or importing within this district and elsewhere in the United States, without authority, products that infringe the '145 Patent.

45

135.    The Accused Products infringe at least one claim of the '145 Patent. By way of example, the Apple iPhone 16e (the "Accused Phone") infringes claim 1 of the '145 Patent. Claim 1 of the '145 Patent recites:

> **1.** A display panel, comprising:
>
> a substrate having a display area and a blank area adjacent to the display area, the blank area comprising:
>
>> a metal-line region comprising an insulating multilayer formed on the substrate and a conductive pattern layer formed on the insulating multilayer, so that a plurality of parts of the surface of the insulating multilayer are exposed to be a plurality of isolated zones by forming the conductive pattern layer,
>>
>> wherein the insulating multilayer beneath the conductive pattern layer covers the entire substrate at the blank area.

136.    The Accused Phone includes a "display panel," as illustrated in the images shown below.



The iPhone 16e display has rounded corners that follow a beautiful curved design, and these corners are within a standard rectangle. When measured as a standard rectangular shape, the screen is 6.06 inches diagonally (actual viewable area is less).



137.    The "display panel" of the Accused Phone comprises "a substrate," as illustrated in the annotated image of a display panel edge.



47

138.    The "substrate" of the "display panel" of the Accused Phone comprises "a display area and a blank area adjacent to the display area," as illustrated in the annotated image of a display panel edge.



139.    The "blank area" of the "display panel" of the Accused Phone comprises "a metal-line region comprising an insulating multilayer formed on the substrate and a conductive pattern layer formed on the insulating multilayer," as illustrated in the annotated images of a display panel edge and a metal-line region cross section.



140.    The "display panel" of the Accused Phone comprises "a plurality of parts of the surface of the insulating multilayer [that] are exposed to be a plurality of isolated zones by forming the conductive pattern layer," as illustrated in the annotated image of a metal-line region cross section.



141.    In the "display panel" of the Accused Phone, "the insulating multilayer beneath the conductive pattern layer covers the entire substrate at the blank area," as illustrated in the annotated image of a metal-line region cross section.



142.    BOE therefore has directly infringed the '145 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing into the United States the Accused Products, their components and processes, and/or products that incorporate the fundamental technologies and claims of the '145 Patent. As one example of infringement under 35 U.S.C. § 271(a), BOE sold and made Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or delivered the Accused Products outside of the United States intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States.

143.    NeoLayer is also informed and believes, and on this basis alleges, that BOE has induced infringement of the '145 Patent, in violation of 35 U.S.C. § 271(b), by intentionally aiding and encouraging third parties (including BOE's vendors, customers, and partners) to use, sell, or offer for sale in the United States and/or import into the United States the Accused Products, having known that the acts it was causing would infringe or have a high probability of infringing the '145 Patent under 35 U.S.C. § 271(a) and with a specific intent that those performing the acts infringe the '145 Patent.

144.    NeoLayer is also informed and believes, and on this basis alleges, that BOE contributorily infringed the '145 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate them into other products, including the iPhone 16e and other end-user devices. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the '145 Patent. The OLED displays that BOE has sold and/or provided to customers embody a material part of the claimed invention of at least one claim of the '145 Patent.

145. BOE has been on notice of the '145 Patent, at least as early as the filing and service of this Complaint.

146. BOE's direct and indirect infringement of the '145 Patent is ongoing.

147. As a result of BOE's infringement of the '145 Patent, NeoLayer has been damaged. NeoLayer is entitled to recover for damages sustained as a result of BOE's wrongful acts in an amount yet to be determined.

148. BOE's infringing acts and practices have caused and are causing immediate and irreparable harm to NeoLayer.

## XII.    COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 8,168,976 (THE "'976 PATENT")

149. NeoLayer re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

150. NeoLayer is informed and believes, and on this basis alleges, that BOE, agents of BOE, and/or third parties acting under BOE's direction and control, have committed acts of direct infringement under 35 U.S.C. § 271(a) of the '976 Patent literally and/or under the doctrine of equivalents by making, using, selling, offering to sell, and/or importing within this district and elsewhere in the United States, without authority, products that infringe the '976 Patent.

151. The Accused Products infringe at least one claim of the '976 Patent. By way of example, the Apple iPhone 16e (the "Accused Phone") infringes claim 1 of the '976 Patent. Claim 1 of the '976 Patent recites:

> **1.** A display panel, comprising:
>
> a substrate having a display area and a blank area adjacent to the display area, the blank area comprising:
>
> > a non-metal line region having a plurality of insulating patterns and a first conductive pattern layer formed on the substrate, the insulating patterns spaced apart from each other by the first conductive pattern layer; and

a metal-line region having an insulating multilayer formed on the substrate and a second conductive pattern layer formed on the insulating multilayer, so that a plurality of isolated zones are formed on a surface of the insulating multilayer by the second conductive pattern layer.

152.   The Accused Phone includes a "display panel," illustrated in the image shown below:



The iPhone 16e display has rounded corners that follow a beautiful curved design, and these corners are within a standard rectangle. When measured as a standard rectangular shape, the screen is 6.06 inches diagonally (actual viewable area is less).



52

153.    The "display panel" of the Accused Phone comprises "a substrate," as illustrated in the annotated image of a display panel edge.



154.    The "substrate" of the "display panel" of the Accused Phone comprises "a display area and a blank area adjacent to the display area," as illustrated in the annotated image of a display panel edge.



155.    The "blank area" of the "display panel" of the Accused Phone comprises "a non-metal line region having a plurality of insulating patterns and a first conductive pattern layer formed on the substrate, the insulating patterns spaced apart from each other by the first conductive pattern layer," as illustrated in the annotated images of a display panel edge and a non-metal line region cross section.



156.    The "blank area" of the "display panel" of the Accused Phone comprises "a metal-line region having an insulating multilayer formed on the substrate and a second conductive pattern layer formed on the insulating multilayer, so that a plurality of isolated zones are formed on a surface of the insulating multilayer by the second conductive pattern layer," as illustrated in the annotated images of a display panel edge and a metal line region cross section.



157.    BOE therefore has directly infringed the '976 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing into the United States the Accused Products, their components and processes, and/or products that incorporate the fundamental technologies and claims of the '976 Patent. As one example of infringement under 35 U.S.C. § 271(a), BOE sold and made Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or delivered the Accused Products outside of the United States intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States.

158.    NeoLayer is also informed and believes, and on this basis alleges, that BOE has induced infringement of the '976 Patent, in violation of 35 U.S.C. § 271(b), by intentionally aiding and encouraging third parties (including BOE's vendors, customers, and partners) to use, sell, or offer for sale in the United States and/or import into the United States the Accused Products, having known that the acts it was causing would infringe or have a high probability of infringing the '976 Patent under 35 U.S.C. § 271(a) and with a specific intent that those performing the acts infringe the '976 Patent.

159.    NeoLayer is also informed and believes, and on this basis alleges, that BOE contributorily infringed the '976 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate them into other products, including the iPhone 16e and other end-user devices. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the '976 Patent. The OLED displays that BOE has sold and/or provided to customers embody a material part of the claimed invention of at least one claim of the '976 Patent.

55

160.   BOE has been on notice of the '976 Patent, at least as early as the filing and service of this Complaint.

161.   BOE's direct and indirect infringement of the '976 Patent is ongoing.

162.   As a result of BOE's infringement of the '976 Patent, NeoLayer has been damaged. NeoLayer is entitled to recover for damages sustained as a result of BOE's wrongful acts in an amount yet to be determined.

163.   BOE's infringing acts and practices have caused and are causing immediate and irreparable harm to NeoLayer.

## XIII.   COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 7,541,737 (THE "'737 PATENT")

164.   NeoLayer re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

165.   NeoLayer is informed and believes, and on this basis alleges, that BOE, agents of BOE, and/or third parties acting under BOE's direction and control, have committed acts of direct infringement under 35 U.S.C. § 271(a) of the '737 Patent literally and/or under the doctrine of equivalents by making, using, selling, offering to sell, and/or importing within this district and elsewhere in the United States, without authority, products that infringe the '737 Patent.

166.   The Accused Products infringe at least one claim of the '737 Patent. By way of example, the Google Pixel 9 Pro (the "Accused Phone") infringes claim 1 of the '737 Patent. Claim 1 of the '737 Patent recites:

> **1.**  An organic electroluminescent device (OELD), comprising:
> an anode and a cathode;
> an emissive layer disposed between the anode and the cathode;
> a hole source disposed between the anode and the emissive layer; and

an electron source comprising a mixture of at least an organic material and at least a salt, and the electron source disposed between the cathode and the emissive layer, wherein the salt concentration distribution in the electron source is increasingly varied with position closer to the cathode, such that the concentration of the salt in the part of the electron source adjacent to the cathode is higher than the concentration of the salt in another part of the electron source adjacent to the emissive layer.

167.    The Accused Phone comprises an "organic electroluminescent device," as illustrated in the image shown below.



168.    The "electroluminescent device" of the Accused Phone comprises "an anode and a cathode," as illustrated below in a diagram from BOE's YouTube channel.[17]

---

[17] *One Minute Overview | BOE's High-End OLED Technology – Tandem*, YOUTUBE (Dec. 22, 2025), https://www.youtube.com/shorts/eplS94rRuZY.



169.    The "electroluminescent device" of the Accused Phone comprises "an emissive layer disposed between the anode and the cathode," as illustrated below in a diagram from BOE's YouTube channel.[18]



---

[18] *Id.*

170.    The "electroluminescent device" of the Accused Phone comprises "a hole source disposed between the anode and the emissive layer," as illustrated below in a diagram from BOE's YouTube channel. [19]



171.    The "electroluminescent device" of the Accused Phone comprises "an electron source comprising a mixture of at least an organic material and at least a salt," as illustrated below in various images, charts, and graphs.

---

[19] *Id.*



| Element | Line | At. % | Wt. % | Net Counts | At. % Error | Wt. % Error |
|---------|------|-------|-------|-----------|-------------|-------------|
| C | K | 51.1 | 23.4 | 135 280 | 0.2 | 0.1 |
| O | K | 9.6 | 5.8 | 17 959 | 0.1 | 0.1 |
| F | K | 2.0 | 1.4 | 5 748 | 0.1 | 0.1 |
| Al | K | 13.0 | 13.4 | 179 837 | 0.1 | 0.1 |
| Si | K | 10.7 | 11.5 | 143 632 | 0.1 | 0.1 |
| Ti | K | 2.7 | 5.0 | 26 409 | 0.0 | 0.1 |
| Cu | K | 1.7 | 4.0 | 6 988 | 0.1 | 0.2 |
| Ga | K | 0.6 | 1.6 | 1 828 | 0.1 | 0.3 |
| Mo | L | 3.7 | 13.6 | 102 582 | 0.0 | 0.1 |
| Ag | L | 4.9 | 20.3 | 111 606 | 0.0 | 0.2 |



(XFS test results showing that Fluorine, Sodium, and Chlorine are present at the electron source)

60



(EDS test results showing Fluorine at the electron source)

172.    The "the salt concentration distribution in the electron source" of the "electroluminescent device" of the Accused Phone "is increasingly varied with position closer to the cathode, such that the concentration of the salt in the part of the electron source adjacent to the cathode is higher than the concentration of the salt in another part of the electron source adjacent to the emissive layer," as illustrated below in various images.



**BOE Technology Group Co., Ltd.**

Technical Solution: BOE has developed tandem OLED structures using solution-processed charge generation layers and optimized doping profiles to achieve high efficiency at elevated brightness levels. Their approach combines fluorescent and phosphorescent emitters in stacked configurations with intermediate charge generation units. The company focuses on reducing manufacturing costs through inkjet printing techniques for precise dopant placement and gradient doping strategies. Their tandem architecture utilizes metal oxide-based charge generation layers with controlled doping concentrations to maintain charge balance and minimize voltage increase. BOE's research emphasizes scalable manufacturing processes while targeting 30% power conversion efficiency through optimized device architecture and material selection.



(showing a Fluorine concentration gradient wherein the concentration of the Fluorine-based salt in the part of the electron source adjacent to the cathode is higher than the concentration of the Fluorine-based salt in another part of the electron source adjacent to the emissive layer)

173.    BOE therefore has directly infringed the '737 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing into the United States the Accused Products, their components and processes, and/or products that incorporate the fundamental technologies and claims of the '737 Patent. As one example of infringement under 35 U.S.C. § 271(a), BOE sold and made Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or delivered the Accused Products outside of the United States intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States.

174.    NeoLayer is also informed and believes, and on this basis alleges, that BOE has induced infringement of the '737 Patent, in violation of 35 U.S.C. § 271(b), by intentionally aiding and encouraging third parties (including BOE's vendors, customers, and partners) to use, sell, or offer for sale in the United States and/or import into the United States the Accused Products, having known that the acts it was causing would infringe or have a high probability of infringing the '737

Patent under 35 U.S.C. § 271(a) and with a specific intent that those performing the acts infringe the '737 Patent.

175. NeoLayer is also informed and believes, and on this basis alleges, that BOE contributorily infringed the '737 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate them into other products, including the Google Pixel 9 Pro and other end-user devices. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the '737 Patent. The OLED displays that BOE has sold and/or provided to customers embody a material part of the claimed invention of at least one claim of the '737 Patent.

176. BOE has been on notice of the '737 Patent, at least as early as the filing and service of this Complaint.

177. BOE's direct and indirect infringement of the '737 Patent is ongoing.

178. As a result of BOE's infringement of the '737 Patent, NeoLayer has been damaged. NeoLayer is entitled to recover for damages sustained as a result of BOE's wrongful acts in an amount yet to be determined.

179. BOE's infringing acts and practices have caused and are causing immediate and irreparable harm to NeoLayer.

### XIV.  COUNT IX: INFRINGEMENT OF U.S. PATENT NO. 8,018,013 (THE "'013 PATENT")

180. NeoLayer re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

181. NeoLayer is informed and believes, and on this basis alleges, that BOE, agents of BOE, and/or third parties acting under BOE's direction and control, have committed acts of direct infringement under 35 U.S.C. § 271(a) of the '013 Patent literally and/or under the doctrine of

equivalents by making, using, selling, offering to sell, and/or importing within this district and elsewhere in the United States, without authority, products that infringe the '013 Patent.

182.   The Accused Products infringe at least one claim of the '013 Patent. By way of example, the Hisense 32A45K television (the "Accused Television") infringes claim 1 of the '013 Patent. Claim 1 of the '013 Patent recites:

1.   A pixel structure disposed on a substrate, comprising:

a scan line disposed on the substrate;

a data line disposed on the substrate, the data line comprising:

an upper conductive wire disposed over and across the scan line;

a bottom conductive wire electrically connected to the upper conductive wire;

an active device, disposed on the substrate, and electrically connected to the scan line and the upper conductive wire;

a shielding electrode disposed over the bottom conductive wire; and

a pixel electrode, disposed over part of shielding electrode, and electrically connected to the active device, wherein part of the pixel electrode and part of the shielding electrode form a storage capacitor.

176.   The Accused Television includes an LCD display comprising "a pixel structure disposed on a substrate," as illustrated in the images shown below.







177.    The Accused Television includes "a scan line disposed on the substrate," as illustrated below in the annotated images of the display panel.





178.    The Accused Television includes "a data line disposed on the substrate," as illustrated below in the annotated image of the display panel.



179.    The "data line" of the Accused Television comprises "an upper conductive wire disposed over and across the scan line" and "a bottom conductive wire electrically connected to the upper conductive wire," as illustrated below in the annotated images of the display panel and display panel cross sections.



66







180.    The Accused Television includes "an active device, disposed on the substrate, and electrically connected to the scan line and the upper conductive wire," as illustrated below in the annotated image of the display panel.



181.   The Accused Television includes both a "shielding electrode" and a "pixel electrode," as illustrated below in the annotated image of the display panel.



182.   The Accused Television includes "a shielding electrode disposed over the bottom conductive wire," as illustrated below in the annotated image of the display panel.



183.    The Accused Television includes "a pixel electrode, disposed over part of shielding electrode, and electrically connected to the active device," as illustrated below in the annotated images of the display panel.



184.    The Accused Television includes "a pixel electrode" wherein "part of the pixel electrode and part of the shielding electrode form a storage capacitor," as illustrated below in the annotated images of the display panel and display panel cross section.





185.    BOE therefore has directly infringed the '013 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing into the United States the Accused Products, their components and processes, and/or products that incorporate the fundamental technologies and claims of the '013 Patent. As one example of infringement under 35 U.S.C. § 271(a), BOE sold and made Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or delivered the Accused Products outside of the United States intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States.

186.    NeoLayer is also informed and believes, and on this basis alleges, that BOE has induced infringement of the '013 Patent, in violation of 35 U.S.C. § 271(b), by intentionally aiding and encouraging third parties (including BOE's vendors, customers, and partners) to use, sell, or offer for sale in the United States and/or import into the United States the Accused Products, having known that the acts it was causing would infringe or have a high probability of infringing the '013 Patent under 35 U.S.C. § 271(a) and with a specific intent that those performing the acts infringe the '013 Patent.

187.    NeoLayer is also informed and believes, and on this basis alleges, that BOE contributorily infringed the '013 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate them into other products, including the Hisense 32A45K and other end-user devices. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the '013 Patent. The LCD displays that BOE has sold and/or provided to customers embody a material part of the claimed invention of at least one claim of the '013 Patent.

188.    BOE has been on notice of the '013 Patent, at least as early as the filing and service of this Complaint.

189.    BOE's direct and indirect infringement of the '013 Patent is ongoing.

190.    As a result of BOE's infringement of the '013 Patent, NeoLayer has been damaged. NeoLayer is entitled to recover for damages sustained as a result of BOE's wrongful acts in an amount yet to be determined.

191.    BOE's infringing acts and practices have caused and are causing immediate and irreparable harm to NeoLayer.

71

### XV.    COUNT X: INFRINGEMENT OF U.S. PATENT NO. 8,420,413 (THE "'413 PATENT")

192.    NeoLayer re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

193.    NeoLayer is informed and believes, and on this basis alleges, that BOE, agents of BOE, and/or third parties acting under BOE's direction and control, have committed acts of direct infringement under 35 U.S.C. §§ 271(a) and/or 271(g) of the '413 Patent literally and/or under the doctrine of equivalents by making, using, selling, offering to sell, and/or importing within this district and elsewhere in the United States, without authority, products that infringe the '413 Patent.

194.    The Accused Products infringe at least one claim of the '413 Patent. By way of example, the Hisense 32A45K television (the "Accused Television") infringes claim 1 of the '413 Patent. Claim 1 of the '413 Patent recites:

> **1.**  A method for manufacturing a pixel structure on a substrate, comprising:
>
> forming an active device, a scan line, and a bottom conductive wire on the substrate, wherein the active device is electrically connected to the scan line;
>
> forming an upper conductive wire and a shielding electrode, wherein the shielding electrode is disposed over the bottom conductive wire, and the upper conductive wire is electrically connected to the active device; and
>
> forming a pixel electrode over part of the shielding electrode and electrically connected to the active device, wherein part of the pixel electrode and part of the shielding electrode formed a storage capacitor.

195.    The Accused Television includes pixel structures, as illustrated in the images shown below.







196.    The method of manufacturing the Accused Television comprises "forming an active device" and a "scan line" wherein "the active device is electrically connected to the scan line," as illustrated below in the annotated images of the display panel.



197.    The method of manufacturing the Accused Television comprises forming a "bottom conductive wire on the substrate," as illustrated below in the annotated image of the display panel.



198.     The method of manufacturing the Accused Television comprises "forming an upper conductive wire and a shielding electrode, wherein the shielding electrode is disposed over the bottom conductive wire," as illustrated below in the annotated images of the display panel and display panel cross sections.









199.    The method of manufacturing the Accused Television comprises forming an "upper conductive wire [] electrically connected to the active device," as illustrated below in the annotated image of the display panel.



200.    The method of manufacturing the Accused Television comprises "forming a pixel electrode over part of the shielding electrode and electrically connected to the active device, wherein part of the pixel electrode and part of the shielding electrode formed a storage capacitor," as illustrated below in the annotated images of the display panel and display panel cross section.





201.    BOE therefore has directly infringed the '413 Patent under 35 U.S.C. §§ 271(a) and/or 271(g) by making, using, selling, offering to sell, and/or importing into the United States the Accused Products, their components and processes, and/or products that incorporate the fundamental technologies and claims of the '413 Patent. For example, BOE directly infringed the '413 Patent under 35 U.S.C. § 271(g) by offering to sell, selling, importing, and/or using infringing products, their components, and/or products containing same, that were manufactured by a process covered by the '413 Patent. These infringing products, their components, and/or products containing same have not been materially changed by subsequent processes, nor have they become a trivial or nonessential component of another product.

202.    NeoLayer is also informed and believes, and on this basis alleges, that BOE has induced infringement of the '413 Patent, in violation of 35 U.S.C. § 271(b), by intentionally aiding and encouraging third parties (including BOE's vendors, customers, and partners) to use, sell, or offer for sale in the United States and/or import into the United States the Accused Products, having known that the acts it was causing would infringe or have a high probability of infringing the '413 Patent under 35 U.S.C. § 271(a) and with a specific intent that those performing the acts infringe the '413 Patent.

203.    NeoLayer is also informed and believes, and on this basis alleges, that BOE contributorily infringed the '413 Patent under 35 U.S.C. § 271(c) through its supply of the Accused Products to customers that incorporate them into other products, including the Hisense 32A45K and other end-user devices. The Accused Products have no substantial non-infringing uses and are especially designed and made for use in devices that infringe the '413 Patent. The LCD displays that BOE has sold and/or provided to customers embody a material part of the claimed invention of at least one claim of the '413 Patent.

204.    BOE has been on notice of the '413 Patent, at least as early as the filing and service of this Complaint.

205.    BOE's direct and indirect infringement of the '413 Patent is ongoing.

206.    As a result of BOE's infringement of the '413 Patent, NeoLayer has been damaged. NeoLayer is entitled to recover for damages sustained as a result of BOE's wrongful acts in an amount yet to be determined.

207.    BOE's infringing acts and practices have caused and are causing immediate and irreparable harm to NeoLayer.

## XVI.    <u>JURY DEMAND</u>

208.    NeoLayer hereby demands a trial by jury on all issues.

## XVII.    <u>PRAYER</u>

209.    Wherefore, NeoLayer prays for entry of judgment as follows:

210.    A judgment in favor of NeoLayer that BOE has infringed, directly and/or indirectly, and is infringing, either literally and/or under the doctrine of equivalents, the Asserted Patents;

211. A judgment in favor of NeoLayer that BOE's infringement has been and continues to be willful; in the alternative, a judgment in favor of NeoLayer that BOE's infringement is willful and continues to be willful as of the date of this Complaint;

212. An award of damages in favor of NeoLayer adequate to compensate NeoLayer for BOE's infringement of the Asserted Patents which shall in no event be less than a reasonable royalty, together with interest and costs as fixed by the court pursuant to 35 U.S.C. § 284;

213. A permanent injunction in favor of NeoLayer against BOE enjoining BOE, its officers, agents, employees, and others acting in privity, from further infringement of the Asserted Patents;

214. An award of an ongoing royalty for BOE's post-judgment infringement in the event a permanent injunction is not granted;

215. An award of attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law in an amount deemed just and appropriate by the Court;

216. An award of costs and expenses as deemed appropriate by the Court; and

217. Any other legal or equitable relief to which NeoLayer is justly entitled.

Dated: June 9, 2026

Respectfully submitted,

*/s/ Warren J. McCarty, III*

Warren J. McCarty, III
State Bar No.: 24107857
wmccarty@azalaw.com
Sean Keller
State Bar No. 24124532
skeller@azalaw.com
Zachary Grinovich
State Bar No. 24149804
zgrinovich@azalaw.com
**AHMAD, ZAVITSANOS & MENSING, PLLC**
2001 Ross Avenue, Suite 520
Dallas, Texas 75201
Telephone: (214) 800-4501

Andrea L. Fair
Texas Bar No. 24078488
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile:  (903) 757-2323
andrea@millerfairhenry.com

Jason McManis
State Bar No. 24088032
jmcmanis@azalaw.com
Weining Bai
State Bar No. 24101477
wbai@azalaw.com
Thomas DelRosario
State Bar No. 24110645
tdelrosario@azalaw.com
Louis Liao
State Bar No. 24109471
lliao@azalaw.com
Colin Phillips
State Bar No. 24105937
cphillips@azalaw.com
Chun Deng
State Bar No. 24133178
cdeng@azalaw.com
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney Street, Suite 2500
Houston, Texas 77010

81

Telephone: (713) 655-1101
Facsimile:  (713) 655-0062

***Attorneys for Plaintiff
NeoLayer LLC***